IN THE UNITED STATES DISRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**WALTER PYSELL**

    **Plaintiff,**

v.                                                                       Civil Action No. 2:24-CV-2
                                                                         (JUDGE KLEEH)

**UNITED FINANCIAL CASUALTY
COMPANY,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION TO COMPEL [ECF NO. 9]

Presently pending before the Court is Plaintiff's motion to compel [ECF No. 9] responses to discovery requests, and memorandum in support [ECF No. 10], thereof, filed on June 14, 2024. Also, the Court is in receipt of Defendant's response [ECF No. 26] in opposition, thereto, filed on July 8, 2024, as well as Defendant's supplemental response [ECF No. 19], filed on July 18, 2024. Finally, the Court is in receipt of Plaintiff's response [ECF No. 22] to Defendant's supplemental response, filed on July 24, 2024.

By Referral Order [ECF No. 12] dated June 14, 2024, the Hon. Thomas S. Kleeh, Chief United States District Judge, referred the motion to the undersigned United States Magistrate Judge for hearing and entry of an order as to appropriate disposition of the motion. On July 11, 2024, the undersigned Magistrate Judge conducted a Motion Hearing on the subject motion, at which appeared counsel for the respective parties. The undersigned took the parties' arguments under advisement.

On another note, Defendant has filed a motion to bifurcate [ECF No. 20] after raising the issue of bifurcation during the Motion Hearing before the undersigned. The pending motion to

bifurcate now is for consideration by the presiding District Judge. In any event, the undersigned addresses the issues raised in the motion to compel as referred; the matter has not, at this time, been bifurcated.

After a thorough review of the motion to compel and the parties' briefing of it, and after careful consideration of the arguments of counsel at the Motion Hearing and of pertinent legal authority, the Court concludes that Plaintiff's motion should be **GRANTED** for the reasons set forth herein.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This is an action by which Plaintiff seeks payment from Defendant, his automobile insurance carrier, for a claim for underinsured motorist coverage. Plaintiff alleges that he sustained certain injuries when he was rear-ended in an automobile collision on or about March 25, 2021, in Upshur County, in the Northern District of West Virginia. In the Complaint, Plaintiff states that the driver who struck his vehicle had insurance coverage of her own. He also states that the vehicle which that driver was operating was a rental vehicle, and as such, there was an additional policy of coverage for the rental vehicle. After settling with those liability insurance carriers for the policy limits of $25,000.00 per person under each, Plaintiff alleges that he pursued an underinsured ("UIM") motorist claim with Defendant. The underinsured motorist policy limits for this policy were $100,000.00 per person /$300,000.00 per accident.

Plaintiff further alleges that, on August 19, 2022, he made a claim of $100,000.00 to Defendant, that being the per person UIM policy limit. Plaintiff's claim accounted for past medical bills exceeding $36,000.00 and loss of income of $41,154.30. Plaintiff also alleges that he was forced to obtain a personal loan to cover financial obligations while unable to work. Plaintiff states that Defendant's adjuster, Kimberly Williams ("Williams"), did not dispute the medical bills or

loss of income. He also says that Williams was advised that he incurred past pain and suffering and would incur future pain and suffering.

Per the Complaint, Plaintiff continued to communicate with Williams through the remainder of 2023, providing information as requested and receiving offers well below his demand for the policy limit of $100,000.00. Ultimately, Plaintiff represents, the parties did not settle the claim, with Plaintiff reducing his demand to $97,500.00 and Defendant offering $55,000.00. At bottom, Plaintiff alleges, he substantiated his claim to Defendant, but Defendant did not pay the claim as required.

Plaintiff this initiated this action by filing his Complaint on January 18, 2024, in Circuit Court of Upshur County, West Virginia. He brings claims two claims: (1) for breach of contract and breach of the duty of good faith and fair dealing, and (2) for violations of the West Virginia Unfair Trade Practices Act. Defendant removed the matter to this Court on February 16, 2024.

Plaintiff states that he served discovery, that being requests for production of documents, with the Complaint, but that he has not received proper responses to those discovery requests. Essentially, Plaintiff sought Defendant's claim file. Plaintiff also states that the parties engaged in a series of communications by which Plaintiff continued to see responses to the requests. Defendant ultimately provided certain documents, but portions of the materials were redacted. Defendant claimed that the redacted information is shielded from production because it is work product, and provided a privilege log as to the same.[1] Plaintiff argues that Defendant improperly asserts work product protections.[2]

---

[1] Defendant provided an initial privilege log to Plaintiff, and at the request of the undersigned, Plaintiff provided the initial privilege log to the undersigned prior to the Motion Hearing. In the course of that exchange, on which Defendant's counsel was copied, Defendant's counsel provided an amended privilege log.

[2] The issue here is about application of the work product doctrine, and not about application of the attorney-client privilege. The amended privilege log contains one entry which indicates that the material to which

3

## II. ISSUES, ANALYSIS, AND DISPOSITION

The work product rule do not apply here to shield production of materials created by a non-lawyer insurance adjuster which were generated before litigation even began.

### A. Applicable Law

As is well-established, under the Federal Rules of Civil Procedure:

> Parties may obtain discovery regarding any <u>nonprivileged</u> matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Importantly, information need not be admissible to be discoverable. <u>Id</u>. And of course, the relevance of the information sought is key. <u>Virginia Dep't of Corr. v. Jordan</u>, 921 F.3d 180, 188–89 (4th Cir. 2019).

The rule generally shielding work product from disclosure is as follows:

> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>     (i) they are otherwise discoverable under Rule 26(b)(1); and
>
>     (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

---

the entry relates is protected by the attorney-client privilege, not the work product doctrine. At the hearing before the undersigned, Plaintiff's counsel acknowledged that this single entry is attorney-client protected, in that it pertains to the adjuster referring the lawsuit to counsel. As such, Plaintiff does not seek this material, and the undersigned does not address it further.

Fed. R. Civ. P. 26(b)(3).

Additionally, in civil actions such as this one where the Court's jurisdiction is based upon the parties' diversity of citizenship, the federal common law governs the applicability of the work product doctrine, while state law governs the applicability of the attorney-client privilege. Nicholas v. Bituminous Cas. Corp., 235 F.R.D. 325, 329 n. 2 (N.D.W. Va. 2006).

As to the work product doctrine: "[W]hile the protection of opinion work product is not absolute, only extraordinary circumstances requiring disclosure permit piercing the work product doctrine. We acknowledge that the opinion work product rule should be jealously guarded . . ." In re Doe, 662 F.2d 1073, 1079 (4th Cir. 1981). The Fourth Circuit has explained that there are two kinds of work product: (1) that which is "absolutely" immune, being "the pure work product of an attorney insofar as it involves mental impressions, conclusions, opinions, or legal theories . . . concerning the litigation" and which "is immune to the same extent as an attorney-client communication" and (2) that which is "qualifiedly immune, being "[a]ll other documents and tangible things prepared in anticipation of litigation or for trial may be discovered, but only on a showing of 'substantial need.'" Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992) (quotations and citations omitted).

For a work product analysis, a document is prepared in anticipation of litigation if "the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 536, 542 (N.D.W. Va. 2000) (citation and quotation omitted). A court should consider "the nature of the documents, the nature of the litigation, the relationship between the parties . . . and, in addition, the involvement of counsel" to assess whether there was reasonable anticipation of litigation. Id. (citation and quotation omitted).

Finally, the undersigned recognizes that, at least as to the attorney-client privilege, and arguably as to the work-product protection, the burden is on the party asserting the privilege or protection to demonstrate applicability of the same. In re Grand Jury Subpoena: Under Seal, 415 F.3d 333, 338-339 (4th Cir. 2005).

**B. Analysis**

Defendant argues that the written work generated by its adjuster during pre-suit negotiations with Plaintiff constitutes work product insofar that it reflects mental impressions, conclusions, opinions, or legal theories. However, Defendant unconvincingly characterizes its relationship with the Plaintiff before the suit began.

To be sure, this Court has recognized that there can be instances when the insured and insurer are adversaries from the beginning, such that "the insurer can still assert attorney-client privilege and work-product protection over documents in the insured's claim file." Smith v. Scottsdale Ins. Co., 40 F. Supp 3d 704, 716 n. 9 (N.D.W. Va. 2014). However, in the instant matter, the relevant portion of the relationship between claimant and insurer, from which these materials arose, was not adversarial. An insured approaching their insurer about their policy and discussing options for payment is not adversarial. Rather, the basis for the relationship is that an insured purchased a policy and may well need to initiate a claim and navigate the process for pursuing that claim. After all, it is "the very nature of an insurer's business to investigate and evaluate the merits of claims." Kidwiler, 192 F.R.D., at 541 n 32 (quoting Video Warehouse of Huntington, Inc. v. Boston Old Colony Ins. Co., 160 F.R.D. 83, 85 (S.D.W. Va. 1994)).

What is more, this Court has found that when "documents merely consist of benign communications among the parties that contain neither statements to or from the underlying defendants nor opinions and legal strategies about the underlying litigation, they are not protected

6

by . . . the work-product doctrine, and their disclosure is proper." Scottsdale Ins. Co., 40 F. Supp 3d, at 726 (citing Republican Party of N. Carolina v. Martin, 136 F.R.D. 421, 430 (E.D.N.C. 1991)). In the instant matter, the materials at issue constitute the claim file, which was generated during the ordinary course of business, prior to the Complaint being filed and before counsel were involved in a litigation posture. After all, the materials were prepared from August 30, 2022, to December 6, 2023. The Complaint was not filed until January 18, 2024, over a month after cessation of efforts to resolve the claim pre-suit. Nothing adduced shows that the claim file was created in anticipation of litigation. Moreover, as Plaintiff persuasively points out, the materials sought quite likely are of utmost relevance. Plaintiff's claims are for first-party insurance bad faith, and the claim file could well demonstrate how Defendant acted (or did not act) regarding the elements of such a claim.

The undersigned distinguishes the instant matter from a couple of key cases which Defendant cites. First, Defendant relies on the undersigned's order in Town of Anmoore, W. Virginia v. Scottsdale Indem. Co., No. 1:21-CV-142, 2022 WL 2079190 (N.D.W. Va. June 8, 2022). However, in that case, the communications at issue were in aid of litigation and not of the sort, as here, generated for a claim file outside of the litigation context. Second, Defendant relies on Nicholas, 235 F.R.D. 325. However, Plaintiff is correct in that materials at issue in Nicholas were created post-suit, which is not the case here. And in Nicholas, the Court did not foreclose all discovery sought. Thus, Defendant's reliance on these cases is inapposite in the context of the instant matter.

### III. CONCLUSION

Accordingly, based on the foregoing, and as set forth more particularly herein, Plaintiff's motion is hereby **GRANTED.** It is so **ORDERED**.

7

The Clerk of the Court is **DIRECTED** to provide a copy of this Order to any parties who appear *pro se* and all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: August 12, 2024**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE